UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| NEIL HOWLAND, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 1:22 CV 57 CDP |
| | ) |
| GREGORY HANCOCK, et al.,[1] | ) |
| | ) |
| Respondents. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Neil Howland's petition for writ of habeas corpus under 28 U.S.C. § 2254.  I will deny the petition.

## Procedural History

Howland is currently incarcerated at SECC pursuant to a judgment and sentence of the Circuit Court of New Madrid County, Missouri, after a jury found him guilty of murder first degree, abandoning a corpse, two counts of animal abuse, knowingly burning, and tampering with physical evidence.  On December 8, 2017, the circuit court sentenced Howland to life imprisonment without the possibility of probation or parole on the murder charge, and five consecutive four-

---

[1] Petitioner is currently incarcerated at the Southeast Correctional Center (SECC) in Charleston, Missouri.  As Gregory Hancock is the current warden of SECC and is petitioner's custodian, he is substituted for Bill Stange as the proper party respondent in this action.  In addition, as Howland is challenging sentences to be served in the future, Missouri Attorney General Catherine Hanaway is added as a proper party respondent.  *See* Rule 2(a), (b), Rules Governing Section 2254 Cases in the United States District Courts.

year terms of imprisonment on the remaining charges.  Howland's conviction and sentence were affirmed on direct appeal.  *State v. Howland*, 576 S.W.3d 619 (Mo. Ct. App. 2019).

On September 17, 2019, Howland filed a motion for post-conviction relief under Missouri Supreme Court Rule 29.15, which was amended by appointed counsel.  After an evidentiary hearing, the trial court denied the motion.  On February 15, 2022, the Missouri Court of Appeals affirmed the trial court's denial of the post-conviction motion.  (Resp. Exh. 16, ECF 7-15.)  Mandate issued March 3, 2022.

Howland timely filed this habeas petition on April 25, 2022, raising three claims for relief:

1)  That the trial court erred in denying his motion to suppress statements;

2)  That he received ineffective assistance of trial counsel for counsel's failure to call Ruth Warner as a witness to testify at trial; and

3)  That he received ineffective assistance of trial counsel for counsel's failure to call Danielle Pettigrew as a witness to testify at trial.

In response, respondent contends that I must defer to the Missouri Court of Appeals' determinations that the claims are without merit and deny the petition. For the following reasons, I agree and will deny the petition.

**Standard of Review**

Federal habeas relief is available to a state prisoner "only on the ground that

he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  *See also Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990).

In order to obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in state court in accordance with state procedural rules.  *Duncan v. Henry,* 513 U.S. 364 (1995) (per curiam); *Beaulieu v. Minnesota*, 583 F.3d 570, 573 (8th Cir. 2009) (quoting *Gilmore v. Armontrout,* 861 F.2d 1061, 1065 (8th Cir. 1988)).  Where the state court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  *See Williams v. Taylor*, 529 U.S. 362, 379 (2000).  The source of doctrine for such clearly established federal law is limited to the United States Supreme Court.  *Id.* at 380-83.

A state court's decision is "contrary to" clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially

indistinguishable facts. *Williams*, 529 U.S. at 412-13; *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001). A state court's decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Merely erroneous or incorrect application of clearly established federal law does not suffice to support a grant of habeas relief. Instead, the state court's application of the law must be objectively unreasonable. *Id.* at 409-11; *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, a federal court must presume that state court findings of basic, primary, or historical facts are correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not *ipso facto* ensure the grant of habeas relief. Instead, the determination of these facts must be unreasonable in light of the evidence of record. *Collier*, 485 F.3d at 423; *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA [Antiterrorism and Effective Death Penalty Act] to exercise only limited and deferential review of underlying

state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  To obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)).  This standard is difficult to meet.  *Id.*

## Background

As set out above, a jury convicted Howland of first-degree murder and related offenses.  On post-conviction appeal, the Missouri Court of Appeals summarized the evidence adduced at trial as follows:

> In the early evening of August 7, 2013, the lifeless body of [Howland's] mother ("Victim") was located inside her burning vehicle in a Scott-County cornfield.  The bones of two dogs were also found inside the vehicle.  After a few initial denials, [Howland] confessed to the crime on August 10, 2013, telling officers that he had killed Victim by strangling her with a dog leash.  He then placed her body in her vehicle, drove it to the cornfield, doused it with gasoline, and set it on fire.  [Howland] told officers that he had also burned the dog leash.  Finally, he told them that Victim's small dogs were in the vehicle with her when he burned it.

> At trial, [Howland] told a different story, testifying that his girlfriend, Tiffany Warner ("Girlfriend"), had killed Victim by pushing her down the stairs.  [Howland] said that he disposed of Victim's body by burning it inside her vehicle to protect Girlfriend.  [Howland] denied putting the dogs into the car, saying that they must have already been inside Victim's vehicle.  Testifying for the State, Girlfriend identified [Howland] as Victim's killer, saying that she saw [Howland] begin to strangle Victim to death with a leash during the course of an altercation.  Soon thereafter, Girlfriend saw Victim's

lifeless body lying in the floor, and [Howland] had her buy gasoline before they drove out to the cornfield with Victim's body.

(Resp. Exh. 15, ECF 7-15, Mo. Ct. App. Stmt. at pp. 2-3 (footnote omitted).)[2]

## Motion to Suppress

In Ground 1 of his petition, Howland asserts that the trial court erred in denying his motion to suppress statements, and particularly the tape and transcript of his confession made to officers on August 10, 2013. Howland contends that after the officers ended his initial interview that day, they failed to readvise him of his rights under *Miranda v. Arizona*[3] before interviewing him again and obtaining his confession. Howland raised this claim on direct appeal. After consideration of the merits of the claim, the Missouri Court of Appeals denied relief.

As to Howland's claim of trial error, the Missouri Court of Appeals summarized the relevant facts as follows:

> In the early evening of . . . August 8, Missouri State Highway Patrol Corporal Jeff Johnson and Lieutenant Jerry Bledsoe with the Scott County sheriff's office interviewed [Howland] a second time in an "interview room at the Scott County sheriff's office" – [Howland] was advised of his *Miranda* rights at the outset of this interview even though he came to the interview "voluntarily" because, by that time, the investigators "had determined that [Howland] more than likely was responsible for the crime." Missouri State Highway Patrol Sergeant Brad Lively arrested [Howland] on August 9, 2013, on an unrelated matter involving [Howland's] conduct toward his step-

---

[2] Because Howland does not rebut the court of appeals' factual summary with clear and convincing evidence, I presume the state court's determination of facts to be correct. 28 U.S.C. § 2254(e)(1).

[3] 384 U.S. 436 (1966).

- 6 -

father.  [Howland] again was advised of his *Miranda* rights at the time of his arrest, but was not interviewed until later that day when Corporal Johnson and Lieutenant Bledsoe again advised him of his *Miranda* rights and interviewed him a third time.  [Howland] never admitted in any of these interviews that he was involved in causing his mother's death.  Also, [Howland] does not claim, and there is no indication in the record, that [Howland] invoked his right to remain silent in any of these interviews.

Subsequently, about 5:15 p.m., on August 10, 2013, [Howland] requested through a jail employee to speak to an investigating officer because he "wanted to confess."  Corporal Johnson and Lieutenant Bledsoe spoke to [Howland] that day about 5:45 p.m. – the officers again advised [Howland] of his *Miranda* rights but were unable to ask [Howland] substantive questions about the offenses under investigation because [Howland] conditioned his desire to speak to the officers on the officers' assurances that [Howland] would be permitted to see his girlfriend and infant child.  The officers told [Howland] they did not have the authority to grant his request, and ended the interview.

The officers then spoke to the sheriff and obtained permission to permit [Howland] to see his girlfriend and infant child.  [Howland] again requested through a jail employee to speak to an investigating officer, and Corporal Johnson and Lieutenant Bledsoe subsequently spoke to him shortly after 8 p.m., that same evening.  In that interview, the officers did not again advise [Howland] of his *Miranda* rights, but told [Howland] the officers now had permission for [him] to see his girlfriend and infant son following the interview. [Howland] told the officers he had killed his mother, placed her body in her vehicle, drove his mother's vehicle into a corn field, doused the vehicle with gasoline and set it on fire, and later burned a dog leash he had used to kill his mother.  [Howland's] mother's two small dogs also were in the vehicle and were killed.

*Howland*, 576 S.W.3d at 622-23.[4]

Howland claims that he had invoked his right to silence during the first

---

[4] *See* n. 2.

- 7 -

interview on August 10, and that the officers failed to "scrupulously honor" that invoked right when they conducted the second interview that date without readvising him of his *Miranda* rights.  He claims that any statements made during that second interview should have therefore been suppressed.

At the time Howland's conviction became final, the law was clearly established that "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored[.]'" *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (quoting *Miranda*, 384 U.S. at 474, 479).  For *Mosley* to apply, however, the defendant must have invoked his right to remain silent "unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). *See also United States v. Cajas-Maldonado*, 13 F. App'x 469, 474 (8th Cir. 2001) (per curiam) (*Mosley* does not apply "unless the defendant's statements represent a clear and unequivocal 'expression of a desire to remain silent.'" (quoting *United States v. Thompson,* 866 F.2d 268, 272 (8th Cir. 1989)); *United States v. Hurst,* 228 F.3d 751, 759-60 (6th Cir. 2000) (*Mosley* analysis not applied where the defendant did not clearly and unequivocally assert his right to remain silent.). Absent a simple, unambiguous statement of wanting to remain silent or that he does not want to talk to police, a defendant does not invoke his right to remain silent. *Berghuis*, 560 U.S. at 382.  "To determine whether a defendant has

- 8 -

unequivocally invoked the right to remain silent, the defendant's statements are considered as a whole." *Simmons v. Bowersox,* 235 F.3d 1124, 1131 (8th Cir. 2001).

Here, the Missouri Court of Appeals determined that Howland did not "give a clear, consistent expression of a desire to remain silent" in the first interview and that his statements in fact "show[ed] a clear expression of [his] desire to speak to the investigating officers subject to the officers' assurances that certain conditions would be met. *Howland*, 576 S.W.3d at 624.  Howland gave no unambiguous statement that he wanted to remain silent or that he did not want to talk to police. The court of appeals thus concluded that Howland "never clearly and unequivocally invoked his right to remain silent in the first interview on August 10." *Id.*  Accordingly, when the officers resumed the interview at Howland's request and after having obtained permission to give Howland assurances on his conditions, there was no clear and unequivocal right to silence that the officers were required to scrupulously honor under *Mosley*.

In view of the totality of Howland's statements and the circumstances in which they were given, the court of appeals' decision that Howland did not invoke his right to remain silent was neither contrary to nor an unreasonable application of Supreme Court precedent.  Nor has Howland demonstrated that the decision was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding. The claim raised in Ground 1 of Howland's petition is therefore denied.

## Assistance of Counsel

Grounds 2 and 3 were properly raised and adjudicated on their merits in state court. I therefore address the claims on their merits here, exercising limited and deferential review of the underlying state court decision as required by the AEDPA.

In his claims, Howland contends that trial counsel was ineffective in failing to call Ruth Warner and Danielle Pettigrew to testify on his behalf at trial. Ruth Warner is the mother of Howland's girlfriend, Tiffany Warner; Danielle Pettigrew is Tiffany's sister. Howland asserts that their testimony would have impeached Tiffany's testimony and provided rebuttal evidence supporting his defense that it was Tiffany who killed his mother, the Victim. In denying the claims, the post-conviction motion court concluded that counsel's decision to not call either Ruth or Danielle was a matter of reasonable trial strategy in the circumstances of the case and did not prejudice Howland. (Resp. Exh. 13, ECF 7-13, App. App'x at hpp. 9-11.[5]) On appeal, the Missouri Court of Appeals affirmed the motion court's denial of relief, concluding that Howland suffered no reversible prejudice on account of counsel's decisions.

---

[5] Given that more than one document is included in Exh. 13, I will refer to the page number identified in the ECF header (*i.e.*, "hp.") when citing to it.

At the time the Missouri Court of Appeals adjudicated Howland's claims, the law was clearly established that the Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To be entitled to federal habeas relief on his claims of ineffective assistance of counsel, Howland must show that 1) his counsel's performance was deficient, and 2) the deficient performance prejudiced his defense. *Id.* Howland must satisfy both components of the *Strickland* test. Accordingly, if he makes an "insufficient showing" on one component, I am not required to address the other. *Id.* at 697.

In evaluating counsel's performance, the basic inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Courts must "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. *Id.* at 689. Howland bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In addition, a presumption exists that counsel's conduct "might be considered sound trial strategy." *Id.* at 688. To establish prejudice, Howland "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694.

The Missouri Court of Appeals applied the test articulated in *Strickland* to Howland's claims and concluded that his attorney did not provide ineffective assistance. The court of appeals first acknowledged the motion court's conclusion that counsel's decision to not call either witness was a matter of reasonable trial strategy. Indeed, as found by the motion court on evidence adduced at the evidentiary hearing, counsel reasonably determined that it would be a mistake to call the witnesses as both could have testified to evidence implicating Howland in the murder. (*See* Resp. Exh. 13, ECF 7-13 at hpp. 9-10.) The failure to present witness testimony that could be detrimental to the defense is not unreasonable under *Strickland*. *See Johns v. Bowersox*, 203 F.3d 538, 546 (8th Cir. 2000).

The court of appeals then went on to determine that counsel's failure to call the witnesses did not prejudice Howland given that there was overwhelming evidence of his guilt presented at trial and, further, that the witnesses' testimony would not have provided him with a viable defense that was not already before the jury – that is, that it was his girlfriend who killed his mother:

> Trial counsel impeached Girlfriend at trial and attempted to convince the jury that Girlfriend had killed Victim. Trial counsel began by questioning Girlfriend about statements she had made to police in 2015 that first implicated [Howland] in the murder. Trial counsel then introduced a postcard that Girlfriend had subsequently written to [Howland] (in May 2016) that apologized to [Howland] for implicating him, and it claimed that she had lied to the police because she was scared. It also stated, "[N]o one will have my back like

you[.]"

The jury also heard Girlfriend testify that she did not like Victim; that Victim had very recently attempted to take Girlfriend's paycheck; that Girlfriend did not want to live in Victim's home; and Girlfriend believed that [Howland] had had a difficult childhood because Victim had treated him "very poorly[.]"

The jury heard all of this direct evidence of Girlfriend's admitted disdain for Victim, and the defense theory that Girlfriend had killed Victim was presented to the jury. Even with solid evidence that Girlfriend did not like Victim and had been inconsistent about whether [Howland] had murdered Victim, the jury was able to evaluate the credibility of both [Howland] and Girlfriend during the trial, and the jury found [Howland] guilty.

(Resp. Exh. 15, ECF 7-15 at p. 6.)[6]

Given that the outcome of trial would not have changed because of the overwhelming evidence of guilt, including eyewitness testimony and Howland's confession, and that Howland was able to present his defense to the jury without the testimony of Ruth Warden and Danielle Pettigrew, the court of appeals determined that counsel's failure to call those witnesses did not result in any prejudice to Howland and thus did not constitute ineffective assistance under *Strickland*. That decision was well based on law and fact and was not "contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). *See McCauley-Bey v. Delo*, 97 F.3d 1104 (8th Cir. 1996) (no prejudice for counsel's failure to call witnesses where their testimony was

---

[6] To the extent the court of appeals made factual findings in this summary, I presume those findings to be correct given Howland's failure to present clear and convincing evidence to rebut the presumption of correctness. 28 U.S.C. § 2254(e)(1).

impeachable and government's case was overwhelming).  Nor has Howland shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The claims raised in Grounds 2 and 3 of Howland's habeas petition are therefore denied.

## Certificate of Appealability

Howland has failed to make a substantial showing that he was denied a federal constitutional right.  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (for substantial showing, issues must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings).  I will therefore not issue a Certificate of Appealability on any of his claims.

Accordingly,

**IT IS HEREBY ORDERED** that Gregory Hancock is substituted for Bill Stange as proper party respondent in this action.

**IT IS FURTHER ORDERED** that Missouri Attorney General Catherine Hanaway is added as a proper party respondent to this action.

**IT IS FURTHER ORDERED** that petitioner Neil Howland's petition for writ of habeas corpus under 28 U.S.C. § 2254 [1] is denied.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not

issue in this action because petitioner Howland has not made a substantial showing of a denial of a constitutional right.

An appropriate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2025.